**UNITED STATES of America,
Plaintiff,**

v.

**Byron MITCHELL, Defendant.**

**No. CR.A. 96–407–1.**

United States District Court,
E.D. Pennsylvania.

April 9, 2002.

Paul A. Sarmousakis, U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Leigh M. Skipper, Defender Ass'n of Philadelphia, Fed. Court Div., Philadelphia, PA, for defendant.

**MEMORANDUM AND ORDER**

JOYNER, District Judge.

Presently before the Court is the Motion for New Trial of Defendant Byron Mitchell ("Mitchell" or "Defendant"). Mitchell was charged with the following three counts: 1) Conspiracy to Commit a Hobbs Act Robbery, 2) Committing a Hobbs Act Robbery, and 3) Use of and Carrying a Fire-

arm during a Crime of Violence. Following a jury trial in which Mitchell was convicted on all three counts, Mitchell filed the present motion for new trial claiming that the Government committed a *Brady* violation by failing to inform Mitchell's counsel of a solicitation issued by the National Institute of Justice ("NIJ") for research regarding fingerprint identification (the "Solicitation"). Mitchell claims that this Solicitation is material to his case because he could have used it to impeach the Government's fingerprint witnesses. For the reasons that follow, we find that the Solicitation is not material, and we, therefore, deny Mitchell's request for a new trial.

## BACKGROUND

This case has a long procedural background that includes two jury trials and an appeal to the Third Circuit. *See United States v. Mitchell*, 145 F.3d 572 (3d Cir. 1998). Aside from the anonymous notes which, pursuant to the Third Circuit's ruling, were not introduced in Mitchell's second trial, the underlying facts of the armored truck robbery and the subsequent facts leading to Mitchell's arrest remain the same as those set forth by the Third Circuit at 145 F.3d 572. Familiarity with those facts is presumed.

Pursuant to the Third Circuit's ruling, the Court conducted a second jury trial in this case. At trial, the Government presented expert testimony of latent fingerprint examiners who made positive identifications of the latent prints found in the abandoned vehicle used in the robbery as matching those of Mitchell. The Defense presented expert testimony challenging that a positive identification could be made with the latent prints in this case. At the conclusion of the trial, the jury returned a guilty verdict on all counts.

Prior to the second jury trial, the Defendant filed a motion to exclude the Government's fingerprint identification evidence and pursuant to the Government's response, the Court held a *Daubert* hearing. At the *Daubert* hearing, the Government and Defense put on numerous witnesses to discuss the validity and reliability of fingerprint technology. At the conclusion of that hearing, we found that the Government's experts met the *Daubert/Kumho* requirements. *See* N.T. 9/13/99, pgs. 3–8; *see also* F.R.E. 702; *Daubert v. Merrell Dow*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). We further found that all of the Government's expert witnesses were permitted to testify as latent fingerprint experts at trial. N.T. 9/13/99 at pg. 4, lines 8–13. Likewise, we allowed Mitchell to call latent fingerprint experts to challenge that an identification could be made from the latent prints at issue in this case. *Id.* at pg. 4, lines 14–20. However, we excluded any evidence at trial as to whether or not fingerprint identification technology is reliable pursuant to the *Daubert/Kumho* standards. *Id.* at pg. 4, lines 14–24. We clarified that the only issue for the experts to discuss at the Mitchell trial was whether or not an identification could be made by examination of the specific latent fingerprints and the record of this case. *Id.* at pgs. 4–5.

In the present post-trial motion, the Defense attempts to revisit the *Daubert* ruling and to call into question the reliability of testimony regarding fingerprint identification technology. The Defense bases their motion for a new trial on "newly discovered evidence" in the form of the NIJ Solicitation seeking research proposals on fingerprint technology. Following the second jury trial, we held an evidentiary hearing regarding the creation of the Solicitation, its possible suppression, and its impact on the testimony of the Government's witnesses (the "Solicita-

tion Hearing"). We now consider whether the Government committed a *Brady* violation regarding the Solicitation.

## DISCUSSION

### I. *Legal Standard*

■ Pursuant to Federal Rule of Criminal Procedure 33, "[o]n defendant's motion, the court may grant a new trial to that defendant if the interests of justice so require." Fed.R.Crim.P. 33; *see also United States v. Bevans*, 728 F.Supp. 340, 343 (E.D.Pa.1990), *aff'd* 914 F.2d 244 (3d Cir.1990). " 'The decision whether to grant a motion for a new trial under Rule 33 is committed to the sound discretion of the trial court, which may set aside the verdict and order a new trial if it ascertains that the verdict constitutes a miscarriage of justice.' " *United States v. Zimmerman*, No. CRIM.A. 99–781–2, 2001 WL 706256, at *3 (E.D.Pa. June 21, 2001)(internal citations omitted).

### II. *The Solicitation*

The NIJ is one of many components of the Office of Justice Programs (OJP), an agency of the United States Department of Justice (DOJ). Its primary functions are research and evaluation. *See* 42 U.S.C. § 3722(c), § 3766. The NIJ does not conduct research itself; rather, it issues invitations for proposals to perform research and awards grant money to those proposals that best meet the research guidelines. *See* N.T. 3/20/01 Boyd Direct pg. 38, lines 5–20. These invitations for research proposals are called solicitations. *Id.* at pg. 85, lines 12–14 (solicitation is declaration of intent to do research). The parties did not provide the Court with any statutory sections or regulations specifically defining the term solicitation for NIJ purposes, and

the Court was unable to locate such a definition through its independent research. However, the C.F.R. entries defining solicitation for research purposes for the Department of Energy and the Department of Agriculture confirm that a solicitation is an invitation to submit research proposals. *See, e.g.,* 10 C.F.R. § 473.2 (Department of Energy)(" 'Solicitation' means a formal, written request for proposals to perform research and development under a grant, cooperative agreement, or contract, typically including evaluation criteria and a statement of the work to be done."); 7 C.F.R. § 3403.2 (Department of Agriculture)("Program solicitation is a formal request for proposals whereby an agency notifies the small business community of its research or research and development needs and interests in selected areas and invites proposals from small business concerns in response to those needs."); *see also* 64 F.R. 45569 (Federal Registry entry discussing NIJ solicitation regarding Forensic DNA Research and Development; confirming definition of solicitation as invitation for research proposals).

The Solicitation at issue sets forth background information regarding fingerprint technology, sets parameters for those applying for research funds, and sets forth the procedures for applying for funds.[1] The specific language of the Solicitation questioned by the Defense states that the field needs "[b]asic research to determine the scientific validity of individuality in friction ridge examination ..." and "[p]rocedures comparing friction ridge impressions that are standardized and validated." The Defense also focuses on the language of the Solicitation which states that "procedures must be tested statistically in order

---

1. The Solicitation was based, in part, on a 1999 NIJ publication titled "Forensic Sciences: Review of Status and Needs." *See* http://www.ojp.usdoj.gov/nij/scidocs.htm (contains text of this 1999 publication). This NIJ publication addressed the need for, among other things, additional fingerprint research.

to demonstrate that following the stated procedures allows analysts to produce correct results with acceptable error rates. This has not yet been done." *See* Forensic Friction Ridge (Fingerprint) Examination Validation Studies, available at *http:// www.ojp.usdoj.gov/nij/fund2000exp. htm* (electronic version of the Solicitation).

III. *The Brady Claim*

 In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). "This prejudice requirement, whether there exists a 'reasonable probability that the suppressed evidence would have produced a different verdict,' is also expressed in terms of the *Brady* materiality inquiry." *Zimmerman*, 2001 WL 706256, at *4 (quoting *Strickler*, 527 U.S. at 281, 119 S.Ct. 1936) and (citing *Kyles v. Whitley*, 514 U.S. 419, 435, 115

S.Ct. 1555, 131 L.Ed.2d 490 (1995)(evidence is material under *Brady* if "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict")). The inquiry is not "whether the defendant would have received a different verdict with the evidence, but whether in its absence he received a fair trial." *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555.

In this case, the Defense does not maintain that the Solicitation contains any exculpatory material. Rather, the Defense argues that Mitchell was prejudiced at trial because he was not able to use the Solicitation to cross-examine the Government's witnesses regarding the reliability of fingerprint identification. Some of the Government's witnesses were on a Fingerprint Research Advisory Panel ("FRAP") which was involved in drafting the Solicitation.[2] The Defense parses apart each word of the final draft of the Solicitation and, based upon the language, argues that the Solicitation is an admission by these Government experts that basic research regarding fingerprint technology is needed to verify its reliability and that this kind of research has never been done. The Defense argues that they would have been able to effectively impeach the Government's witnesses with this so-called admission.[3]

The Government responds that the Solicitation is meaningless to this case and

---

**2.** Significantly, Dr. David A. Stoney ("Stoney"), the Defense expert, was also part of the NIJ Fingerprint Research Advisory Panel ("FRAP"). Stoney attended the first meeting of the FRAP on May 18, 1999 and left that meeting with the initial draft of the Solicitation. *See* Budowle Cross, N.T. 3/20/01 pgs. 106–107 (he learned of Solicitation through David Stoney); Meagher Direct, N.T. 3/20/01, pg. 199, lines 8–18 (Stoney was initially member of FRAP). Thus, well before the *Daubert* hearing before this Court, the Defendant's

own expert knew that the NIJ was planning to release this Solicitation and knew, substantially, what the wording would be. In fact, Stoney only withdrew from the FRAP because he wanted to apply for the NIJ grants offered in the Solicitation. *See* Meagher Direct, N.T. 3/20/01, pg. 199, lines 8–18.

**3.** The Court finds that the Solicitation is not an admission by a party opponent. *See* F.R.E. 801(d)(2).

could not have had an impact on the fairness of the trial. The Government's witnesses all testified at the Solicitation Hearing that the Solicitation in no way changes their testimony at the *Daubert* hearing before this Court and that none of them view the Solicitation as a statement of the state of the research, but merely view it as what it is: an invitation to apply for money to do research. *See, e.g.*, Niezgoda Direct N.T. 3/20/01 pg. 16, lines 6–22 (Solicitation not a scientific document); Boyd Cross N.T. 3/20/01 pg. 85, lines 12–14 (Solicitation not a research finding; "[i]t's only a declaration of intent to do research"); Boyd Cross N.T. pg. 95, lines 16–20; Budowle Direct N.T. 3/20/01 pg. 105, lines 1–11 ("Solicitation is just a proposal for research . . . it doesn't mean anything about the state-of-the-art"); Budowle Cross N.T. 3/20/01 pg. 113, lines 10–13 ("It has nothing to do with science or any studies or foundation to do with anything on fingerprint examinations"); German Direct N.T. 3/20/01 pg. 140, lines 10–12 ("Solicitation just an invitation for research"); Meagher Cross N.T. 3/21/01 pg. 43, lines 14–20 (Solicitation is a research document); Meagher Redirect N.T. 3/21/01 pg. 50, lines 5–10 (not concerned about the language of the Solicitation because it was just a research document).

The Government's witnesses also testified that more research is desirable in any field and pointed particularly to the area of DNA technology where solicitations are frequently issued. *See, e.g.*, Rau Cross N.T. 1/3/01 pg. 111, lines 4–25 (DNA solici-tations were issued during same time frame); Boyd Cross N.T. 3/20/01 pg. 96, lines 13–16 (continuing research necessary for all forensic disciplines including DNA); Budowle Direct N.T. 3/20/01 pg. 104, lines 20–25 (many DNA solicitations are issued); German Direct N.T. 3/20/01 pg. 126, lines 15–25 ("research is always welcome"). In fact, a cursory review of the NIJ's website, which lists solicitations that have been issued in recent years, demonstrates that solicitations are issued in a variety of fields, in many of which the technology is widely accepted. *See, e.g., www.ojp.us-doj.gov/nij/funding.htm.*

■ We find that there is no *Brady* violation in this case because the Solicitation is not material.[4] *See Smith v. Holtz*, 210 F.3d 186, 196 (3d Cir.2000)(no *Brady* violation unless evidence not disclosed was material)(quoting *Strickler*, 527 U.S. at 281–82, 119 S.Ct. 1936). We agree that the Solicitation is not meant to set forth the state of the current research, but rather is only intended to set forth sufficient information such that researchers can apply for funds to perform further research regarding fingerprint technology. Given the nature of solicitations and the testimony of the Government's witnesses at the Solicitation Hearing that the Solicitation does not change their testimony regarding fingerprint technology, we find that the claimed impeachment value of the Solicitation either during the trial or for *Daubert* purposes is questionable at best. We conclude that any heightened cross-examination that the Defense may have conducted

---

4. Given our decision that the Solicitation is immaterial and could not have impacted the fairness of Mitchell's trial, the Court does not find it necessary to address whether the Government knew of the Solicitation or whether they suppressed it. However, we note that the fact that the Defense's own expert participated in the FRAP and knew of the Solicitation and the fact that the Solicitation was based, in part, on an available NIJ publication tends to suggest that the Defense could have known about the Solicitation with a minimal amount of effort and reasonable diligence. *See, e.g., United States v. Perdomo*, 929 F.2d 967, 973 (3d Cir.1991)("Brady does not oblige the government to provide defendants with evidence that they could obtain from other sources by exercising reasonable diligence")(citing *United States v. McKenzie*, 768 F.2d 602 (5th Cir.1985)).

of the Government's witnesses using the Solicitation would not have had any impact on the trial. *See, e.g., United States v. Perez,* 280 F.3d 318, 349–50 (3d Cir.2002)(district court concluded that "heightened cross-examination ... that might have occurred" would not have had an impact on trial).

Significantly, given our ruling at the *Daubert* hearing, it is doubtful that we would have admitted the Solicitation for use in cross-examining the Government's witnesses at trial. The Defense argues that it would have used the Solicitation to impeach the Government's witnesses on whether or not there has been sufficient, or any, research into the validity of using fingerprint identification. However, this kind of cross-examination would go to the *Daubert/Kumho* admissibility standard. Each of the Government's witnesses testified at the Solicitation hearing that the Solicitation did not change their testimony at the *Daubert* hearing. *See, e.g.,* Budowle Direct N.T. 3/20/01 pg. 106, lines 13–16; Budowle Cross N.T. 3/20/01 pg. 113, lines 6–13; German Direct N.T. 3/20/01 pg. 143, lines 5–9; Meagher Direct N.T. 3/20/01 pg. 217, lines 9–16. Moreover, the Defense had the opportunity to cross-examine the Government witnesses regarding their participation in drafting the Solicitation and their understanding of the meaning of the Solicitation during the post-trial Solicitation hearing. After hearing all of this evidence, the Court remains convinced that the fingerprint testimony of these witnesses meets the *Daubert/Kumho* standards. Neither the wording of Solicitation

nor the fact that some of the Government's witnesses were involved in the creation of the Solicitation change this Court's *Daubert* ruling.[5] *See, e.g., United States v. Perez,* 280 F.3d at 350–51 (3d Cir. 2002)(Third Circuit affirms district court's determination that "newly discovered" evidence would not have changed district court's immunity ruling); *see also United States v. Plaza,* 188 F.Supp.2d 549 (E.D.Pa.2002)(allowing fingerprint identification testimony).

The *Daubert* issue being decided in favor of the Government, the Solicitation would not have been admissible or relevant at trial because the reliability of the fingerprint testimony was no longer at issue. *See* N.T. 9/13/99, pgs. 4–5 (we found that only question for trial was whether or not an identification can be made by examination of the specific latent prints in this case). Thus, neither the Solicitation or the Defense's lack of knowledge of the Solicitation could have caused the Defendant to suffer any unfairness at the trial of this matter.

The evidence at the Solicitation hearing established that the Solicitation is not material. Therefore, the Government did not commit a *Brady* violation, and Mitchell's Motion for a New Trial is denied.[6] *See Smith v. Holtz,* 210 F.3d 186, 196 (3d Cir.2000)(no *Brady* violation unless evidence not disclosed was material)(quoting *Strickler,* 527 U.S. at 281–82, 119 S.Ct. 1936).

### CONCLUSION

An appropriate Order follows.

---

**5.** As Judge Pollack stated: "... I am not persuaded that courts should defer admission of testimony with respect to fingerprinting ... until academic investigators financed by the National Institute of Justice have made substantial headway on a 'verification and validation' research agenda. For the National Institute of Justice, or other institutions both public and private, to sponsor such research

would be all to the good. But to postpone present in-court utilization of this 'bedrock forensic identifier' pending such research would be to make the best the enemy of the good." *United States v. Plaza,* 188 F.Supp.2d at 572–73 (E.D.Pa.2002)

**6.** *See* discussion regarding suppression *supra* at note 4.

## ORDER

AND NOW, this day of April, 2002, upon consideration of Defendant Byron Mitchell's Motion for a New Trial and the Government's response thereto, and for the reasons set forth in the foregoing Memorandum, it is hereby ORDERED that the Motion is DENIED.